Drake, Oh. J.,
delivered the opinion of the court:
On the 7th of March, 1864, the claimant chartered the steamer Wyoming to the United States, at Port Boyal, S. 0., and the charter-party contained a stipulation in these words :
“And thereupon the party of the first part, and his heirs, executors, administrators, and assigns, doth hereby covenant and agree to and with the said . party of the second part, that the said vessel now is, and shall be kept and maintained during the whole of the voyage mentioned in this contract, tight, staunch, strong, and well and sufficiently manned, victualed, tackled, appareled, and furnished in every respect fit for merchants’ service, at the cost and charge of her owners. The time lost in consequence of any deficiency in these respects not to be paid for by the United States.”
By the further terms of the charter-party the vessel was to be used in the military service of the United States, under the orders of the quartermaster of the United States Army.
The claimant alleges three causes of action:
*587 I. That, through the misuse of the vessel by the military authorities, and the incompetencv and unskillfulness of the pilots and other officers placed upon her by the officers of the United States, agaiust the protest of the claimant’s agent, the steamer was injured and sustained damage, beyond what would ordinarily happen to a vessel employed in the service for’which she was chartered, in the sum of $50,000.
In support of this part of his demand the claimant showed in evidence that after the discharge of the Wyoming from the Government service he caused her to be repaired at New York, and expended in such repairs more than $17,000, but failed to prove that the repairs were made necessary by usage which amounted to a breach of the charter-party; and the court, therefore, found that “the condition of the vessel at the time of her discharge from the Government service, which made such repairs necessary, resulted from the ordinary wear and tear of the service in which she was engaged under the terms of the charter-party.” This finding leaves no foundation for this part of the claimant’s demand.
II. The second cause of action rests upon the acts of the officers of the Government in making certain deductions from the pay for the Wyoming’s services during the month of August, 1864.
The bill for those services amounted to $5,425; from which those officers deducted the following items :
For repairs put upon'the Wyoming at the Government shop.. $1,257 21
For quartermaster’s stores.-. 1,140 80
For commissary stores... .... 352 24
For lost time, 14^ days. 2,486 45
5,236 70
Against these deductions the agent of the claimant protested, declaring the most of them to be unwarranted and unjust; but stating that since it was impossible for him to receive payment without the deduction, he would accept the same, with the understanding, however, that his rights to a future investigation should be in no wise prejudiced. He did not specify which of the items he deemed unwarranted and unjust, nor did he indicate in what respect he considered any of them objectionable; *588 but satisfied himself with the general terms stated, and then received the balance of $188.30, which remained due after the deductions were made.
It might be questioned whether a vague and general protest like that is a sufficient foundation for an attempt to set aside a settlement such as was made in this case; but as that question was not raised at the trial we will not discuss it here.
As-to the items of $1,257.21, for repairs, and $2,486.45, for lost time, there was no attempt by the claimant to disprove them, nor did he make any effort to show that they should not have been deducted from the earnings of the Wyoming, except on the ground of his general complaint against the usage of the boat on the Ashepoo River expedition, and in regard to that we have found that the condition of the boat when she returned from that expedition, which necessitated those repairs, was not the result of bad treatment of her by the Government officers, but of the failure of her captain to remove her from the bank of the Ashepoo River when ordered to do so; that the repairs were necessary to keep her from sinking; that the claimant had no facilities for making the repairs; aud that he was, therefore, compelled to ha.ve them made by the Government;. On the facts thus found we can see no cause of action whatever for the recovery of the $1,257.21.
As to the item for time lost, the charter-party expressly stipulated that “ time lost in consequence of deficiency ” on the claimant’s part in keeping the boat “tight, staunch, and strong,” should not be paid for by the Government; and it was therefore entirely proper that a deduction should be made of the stipulated wages for the time the boat was'laid up for repairs.
As to the items of $1,140.80, for quartermaster’s stores, and $352.24, for commissary stores, which were deducted from the earnings of the boat, it is sufficient to say that the claimant does not in his petition allege that they were not furnished to the boat by the Government, "nor does the court find anything in regard to them except that they were deducted from the amount due for the services of the boat. ÍTo evidence was offered to prove that they were unjustly deducted. There is, therefore, no ground for a recovery by the claimant of either amount.
III. The last cause of action set forth in the claimant’s peti *589 tion is for $75, which he was obliged, by the Government officers, to pay to a captain put by them on the boat, in the place of his own captain, removed by them.
In regard to this, the facts, as found by the court, are that the claimant’s captain failed on one occasion to carry out promptly the instructions given him by the military authorities, when on a military expedition, and that in consequence thereof the commanding general of the Department of the South removed that captain from the command, and placed the vessel in charge of another captain, whose wages for the time he served in that capacity the claimant was required to pay, and did pay, without protest. His agent merely refused to pay it unless the captain appointed by the military authorities would write a receipt, showing the circumstances under which he got possession of the vessel. This demand, however, he aban doned, and paid the amount when informed by a quartermaster that if he did not pay it he could not have the vessel turned over to him. On these facts there is no ground for any claim against the Government. The payment was voluntary on the part of the claimant’s agent, and the money is not recoverable in this action.
No one of the causes of action set forth by the claimant has been sustained, and his petition, therefore, is dismissed.